have with us Senior Judge Beezer. Senior judges do not have to do this. This is the goodness of their heart. They get paid the same amount whether they do it or not. So thank you, Judge Beezer. This mother's on that dole, too. We've got three cases on the argued calendar this morning. We've read your briefs and we look forward to your arguments. The first one is United States v. Dixon. And when you're ready, counsel. Your honors, good morning. My name is Ken Malikian. I'm an assistant United States attorney from the Eastern District of California. And I am, of course, representing the appellant, the United States of America, in this action. Before I begin, I'd like to request permission of the court to reserve two minutes for rebuttal. Sure. We'll try to keep track of it. But if you can help, I would appreciate it. I'll do the same. Thank you. Your honors, in the case of United States v. Banks, which this court is very familiar with, the United States Supreme Court addressed a Could you go over the facts in some detail on that one? Judge Fletcher and I would like to have a reprise of that. I thought the court would be pretty familiar with it. In any event, when this motion was decided in the district court, clearly the district court was bound by the guidance this court provided in its Banks decision. Subsequent to that, the United States Supreme Court has issued guidance which is different. And I would submit that based upon the holding in the Supreme Court's case, the officers, their actions in forcing entry after the 20-30 second wait in this case, should be upheld. Banks is a little different, isn't it? Yes. Does the government take the position that there were exigent circumstances here or that there were not? So under that configuration, how are we looking at the case? Your honor, the government takes the position that in a situation such as Banks, where you have a search warrant for drugs, which are easily disposable. All right. Now, in connection with the search warrant, the officers had the supporting affidavit? Yes, they did. So they're aware of the facts that were alleged to the magistrate or the judge that issued the warrant, right? Your honor, if I recall, and I don't believe this was handled, I'd strike that, I'd strike that if I could. In the evidentiary hearing, Agent Bottomley indicated that he had read the warrant, but he wasn't certain as to whether or not The warrant or affidavit in support of the warrant? Actually, he had written the affidavit, I believe. But I don't believe he indicated that it was gone over at the briefing, so I don't think I have any basis to say to the court that the other agents that were executing the search warrant were aware of the facts which constituted probable cause. Was the officer who had the knowledge the lead officer on the task? Yes. Okay. And I do believe, in fact I'm certain, that the officers knew what they were searching for. They were searching for narcotics, narcotics paraphernalia, and such. So it's the government's position, to answer Judge Fisher's question, that when you have a search warrant for drugs or anything that's easily disposable, and you have a situation where you don't know whether anybody is home, exigent circumstances exist. Per se in a drug case? I would say per se in drug cases, as long as it's a time of day where someone would be expected to be awake. The Supreme Court didn't explicitly say that. But using its analysis, it's clear in the Banks case that the officers knocked and announced. They didn't hear a noise from within the residence, didn't hear a sound. And after 15 to 20 seconds, they forced entry. They rammed in the door. Do we have a copy of the underlying affidavit for the search warrant in the record? If I could have just one quick check. I don't believe so, Your Honor. Here's one. I didn't ask record. Your Honor, not in this court's record. It was before the district court. Well, it's in the district court record. Yes. Oh, so we have it in the record. This is not in the excerpt's record. Not in the excerpt's, correct. No, my question was to record, not excerpt's. Oh, I'm sorry, Your Honor. It is in the excerpt's. And when the Supreme Court held as they did in Banks, when you have officers who are at the front door and just don't know one way or the other whether or not anyone's home, if you allow more than that period of time, the 15 to 20 seconds, at that time of day, which admittedly was 2 in the afternoon, exigent circumstances exist. What do we do with Bottomley's testimony where he gives a number of reasons, none of them supporting exigent circumstances? Your Honor, he basically said there were three scenarios. The first, he didn't necessarily expect to find anyone inside. He said, I didn't expect to see anyone in that house. He said a second possible scenario was there was someone there who was sleeping and probably sleeping deeply and wasn't at the front door after 20 to 30 seconds. Third scenario was it's happened more than a few times. We've heard nothing inside, and we go inside, and sure enough someone is awake and in the residence. And he said more than that and just sitting there? I'm sure the court's correct. I don't recall that, but I'm sure the court's correct. I have to paraphrase, but there were words to that effect in the third scenario. So Agent Bottomley did not testify directly that he expected someone to be inside destroying drugs, but I don't think the Supreme Court requires that in banks, the analysis in banks. But if the agent who both has done the affidavit and is conducting the search and is the only person giving us testimonial evidence as to what justifies the search and what he expects gives us three scenarios, none of which involve disposing of drugs, we're supposed to make it up?  I think, Your Honor, the Supreme Court determined, and I'm paraphrasing also. I'm not using their exact language, but they said the observations of a reasonable officer would dictate in a case like this. Is he not a reasonable officer? No, no, no. He is. And I don't believe he ever stated on the record, off the record anywhere, that he did not or he knew that no one was in the residence and he knew that no one was destroying drugs. The Supreme Court in banks doesn't say that you have to have the subjective belief. It talks about a reasonable officer, and that reasonable officer, any reasonable officer who's at the front door and has waited a period of time is going to realize that he doesn't know who's inside, and not knowing who is inside, there's a possibility that a destruction of evidence is occurring. The Supreme Court stated hypothetically. Is the possibility sufficient, or must there be a probability? Reading the Supreme Court's decision, I think it just requires a possibility. There was absolutely no evidence. In fact, in this court, the United States v. Chavez-Miranda, this court observed the facts in banks. It said the officers did not know if the suspect was home, received no response whatsoever to the knock and announcement, and heard absolutely no noise from inside the residence. I'd say that there was a probability under those situations that nobody was home. They didn't hear a noise for 15 to 20 seconds, didn't hear a sound, just complete silence. There is not a probability in a situation like that that someone's going to be home and awake and coming to the door or doing otherwise. How would you, assuming that we were to conclude that the record doesn't support exigent circumstances, how would you then address the duration that elapsed? I would state that if the court does not find that exigent circumstances existed, as they did in banks, that the officers still waited a fairly reasonable time, a minimum of 20 seconds, up to 30 seconds. The testimony is clear that the agent testified that at a minimum he waited that long, probably longer, and the court made the factual finding that there was a 20 to 30 second wait. And every single court of appeals, at least the cases that I'm aware of and that are cited, and I believe it's footnote 7 in United States v. Chavez-Miranda, has upheld a wait of 20 seconds or less, and not all of those cases, as I recall, explicitly found that there were exigent circumstances, just found that after waiting for a period of time of 20 seconds or less, the police were authorized to force entry to serve a search warrant. So I would indicate, even without exigent circumstances, the weight of authority, a virtually unanimous weight of authority, is that 20 to 30 seconds is really a fairly long period of time to wait. Did the district court specifically state on the record the state of mind, make a finding or state, indicate the state of mind of the officer? Yes. Excerpt of record, page 110. It's the second page of the court's order, line 13. The district court in its order said that he, meaning Agent Bottomley, had no reason to believe that Dixon was disposing of the contraband prior to entry. All right. You're bound by that, right? Pardon? You're bound by that. Yes. And I don't believe it. By banks. Yes. And I think the same existed in banks. The police in banks, you could say the same thing, had no reason to believe that banks was inside disposing of contraband prior to entry. It's an identical situation.  Yes, that's what Agent Bottomley testified to. Was there any testimony in banks? I mean, this is pretty clear testimony. Maybe the record was simply silent in banks. Your Honor, I can only – Maybe it's not a question that was addressed in banks. I can only discern from the record what this court and what the Supreme Court have stated in banks. And they, of course, I don't have access to, but basically all I can say about banks is you had a situation where there was a knock on an ounce, absolutely no sounds inside, no one coming to the door, silence, and no idea whether or not anybody was home inside the residence. I can't extrapolate beyond that, unfortunately. Okay. I think we've got your argument well in hand. Let's hear from the other side, and we'll give you some time for rebuttal. Thank you very much. Thank you. Good morning. May it please the Court. Joseph Shemaria on behalf of APALE, Mr. Dixon. I think that, if anything, the Supreme Court in banks reinforced the need for exigent circumstances. The opinion talks about the necessity for there being exigent circumstances in various places throughout the opinion, and it talks about a need to do a fact-specific finding on a case-by-case basis. I think that's exactly what Judge Damrell did in this situation. He found differences. He found specific facts like the 8, 10 a.m. versus 2 p.m. execution of the warrant time in Dixon versus banks to be very significant, finding at 8, 10 a.m. people might be just getting up or they might still be asleep or just getting ready to go about their day. Well, in this case, though, there was a lot of banging on the door, banged on the window, waited 20 to 30 seconds. That's longer than banks. I agree, Judge. Justice Souter spent a bit of time, it may be dictum, but he seems to talk about the circumstance where there may not be exigent circumstances, but there is the right to enter based on the probable cause, and then the question is whether there's constructive refusal to respond, to grant entry. And the opinion, the tone and language of the opinion seems to suggest that if you're not dealing in an exigent circumstance case, then the question is whether there's been a reasonable time for the homeowner or occupant, if they are there, to respond. And he gives the example of five seconds in a motel room, maybe a couple minutes in a townhome, and then in his footnote he talks about 15 seconds in a small apartment. Well, this is a small apartment, so what do we do with that language? Treat it as just dictum, or what is he talking about there? What is he talking about? Judge Fischer, that's a good question. He leaves us somewhere between Richards v. Wisconsin, which specifically rejected a blanket exception for no compliance with 3109 in drug cases, and the 20 seconds, where the officers waited 20 seconds in banks. Kind of in a no-man's land here. Absent exigent circumstances, such as we have in the instant case, I think the officers have to wait a reasonable period of time to warrant a reasonable inference that they've been denied refusal or there is nobody home. What's the time frame? As I say, the signals that Justice Souter puts in his opinion, in footnote 6, he's not talking about banks, but he says the apartment was small, referring to the bank situation, and a man may walk the length of today's small apartment in 15 seconds. In the context of talking about constructive refusal, that suggests that even absent exigent circumstances in a small abode, this was a 900-square-foot, two-bedroom apartment, as I understand, that 20 to 30 seconds falls within the reasonable time to respond rubric. I can't argue with your interpretation of that. However, it conflicts with the thrust of the rest of the opinion that exigent circumstances must exist, absent exigent circumstances, they have to wait a reasonable period of time, and we just the case does emphasize a fact-specific inquiry, and I think if you look in Dixon, as opposed to banks, there's a couple of things that distinguish this case. In Dixon, it is more like instead of knock and notice or knock and announce, it's more like shock and awe. They're banging on the front door all of a sudden at 841, and they're banging on the window. I mean, in today's times, when you're awoken or you're in the shower, or just getting out of bed and you hear this kind of banging, this is not somebody ñ this is not the normal conduct you would expect of a police officer wanting to gain lawful entry to your house to execute a search warrant. It's something that's going to startle everybody. It's a ñ I mean, but the whole premise of the bank's opinion is that the police do have the right to enter and to forcibly enter, even without a knock. He starts off and sort of has this front section of the opinion opining about circumstances when you can enter without even announcing at all. And then he gets into banks' circumstances, and then he has this passages relating to what I read as sort of a presumption that the police can forcibly enter if they're constructively refused entry. They can shorten the time down if there are exigent circumstances, but there has to be a reasonable amount of time. Your scenario that you've just discussed seems responsive to that construct by the police saying we're going to beat the heck out of the door and the window to make sure if there is anybody there. They hear us, so they can't say, well, we didn't ever hear anything. And then the question becomes, how long does it take for somebody to yell out a response from inside the house, respond to the door? It's very difficult. I'm not suggesting this is a simple case or a simple analysis, but having been given this explicit guidance most recently in banks, that's our guidepost, at least it is for me. Yes. I just go back to you found in your dissent, you found banks to be a close case, and the Supreme Court agreed with you. And this is also a close case. But here, I mean, if we do away with exigent circumstances, what are we down to? We're down to, I mean, we're down to really nothing. We're down to the virtual abdication of. There's at least a starting point of some knowledge, and it's encompassed in the affidavit that's presented for the warrant. And at least an independent magistrate has taken a look at it to say there is at least sufficient evidence to execute a warrant and to make the search. So we're not starting at ground zero. This is not just ringing a doorbell and breaking in somebody's house because they're in a neighborhood where they deal drugs. There's more than that in this case. That's true. The premise is there. The question is what actually happens at the time of the knock and the refusal of entry one way or another, either by reason of absence of the homeowner or by reason of the silence of the occupant or occupants. Yes, Your Honor. And in that respect, I would emphasize or point out that 1531 of the Penal Code in the state of California is called knock and notice is pretty much the same as a knock and announce of 3109 in Title 18. And there's specific provisions and cases from the California Supreme Court that allow a judge such as Mike Neal in this case, Mike Neal, excuse me, in Fairfield, Solano County, to preauthorize nighttime execution of the warrant or to dispense with knock and notice on the showing of good cause in the affidavit. Now, I don't know if Officer Bottomley attempted to make that showing and it was rejected by Judge Neal, or if more than likely there was probably no attempt to make that showing. However, if they had it, they should have put it before the issuing magistrate and had them agree to it, and they would have no problem. So they didn't do that here. So here we have, like the bank situation, we've got to look at anything that occurred from the minute they knocked until when they broke in. And it just there's just no exigency here. Here's my problem with this case, and it's a puzzler, partly because of the way the Supreme Court wrote its opinion in banks. The statute says that they can enter without someone allowing them in when they think that they have been refused entry. There's been a gloss put on the statute that they can also enter without having been admitted when they think there are, when they have some reason to believe that there is, there are exigent circumstances. Here we have testimony from the one, the only testimony we have is from the officer who apparently swore out the affidavit. And I've got to go back and look at the affidavit in the record. I've seen the excerpt, but I've not actually seen the affidavit itself. Maybe there's something else. But he gives three reasons, none of which supports exigent circumstances. Well, if he doesn't know one way or the other whether somebody's home, waiting 20 seconds, waiting five minutes, waiting a half an hour doesn't tell him what he doesn't know pretty fast about refusing entry. Maybe there's nobody home. So refusing entry, waiting between 20 seconds and a half an hour doesn't tell him anything more. What worries me about this case is, number one, maybe the Supreme Court is telling us without quite saying so overtly that drug cases are different and that there are per se exigent circumstances in drug cases. Maybe. Another thing that worries me is, well, if we seize upon the specific facts of this case and we say, now, Officer Bottomley gave us three scenarios. He was asked this not only on direct but on cross, that is to say there's an attempt to rehabilitate. So we finally get the, well, he's just sitting there sort of answer on cross. And despite having been asked both on direct and on cross, he gives absolutely nothing to support exigent circumstances. Okay. We say, well, in this circumstance, we find no exigent circumstances. Well, that's an instruction to every officer in the country to say, I thought maybe they were going to dispose of the drugs, which is very easy to say. Different result. That's to say we may save your client, but we've erected a rule that provides no protection and some incentive to lie. What do we do? Excuse me. With all due respect, Judge Fletcher, I think that exists in every one of these search and seizure cases. I think that basically officers are taught by various law enforcement agencies what the latest pronouncements are from the Ninth Circuit, the U.S. Supreme Court, the California Supreme Court. And they're also taught, frankly, how to, I guess, lawfully get around the rulings of each court. And I guess the chips will fall where they will, and they have to deal with it. It's better than a blanket rule that, well, absent exigent circumstances, exigent circumstances are no longer required. If you wait 20 seconds, go in if it's a drug case. And, I mean, this is a, you know, I think Judge Damrell had, I think he was being really nice to Agent Bottomley, Officer Bottomley, a state agent, when he was there and making his ruling. But you've got to consider, when you have a narcotics officer that kicks in 50 percent of the doors he's executing search warrants at, and he's executed over 500 of them, something is wrong. Something's wrong. This is like a hair trigger. This is like a guy that can't wait to knock that door down and would prefer to knock the door down than to have it open, I think. Well, and he's apparently knocked down 500 of them. And the most he can say is, well, sometimes they didn't answer because they were just sitting there. He never says, in my experience, even one time they were hiding, they were flushing them down the toilet. I know. I think that one cuts your way, right? But I think when you're dealing, I mean, I know the size of the drug dealer is not really a relevant consideration, but, I mean, this is a really small, pine drug dealer. In other words, he could have, since there were so few, he really could have put them down the toilet. What were the drugs here, cocaine? Yeah, there were, excuse me, there was, drugs were found, you know. Yes, I mean, it was disposable drugs. Yeah, small quantities, yeah. So the little guy who really can flush them down the toilet, that's the circumstances. The big fish, when there are too many, eh, okay. Well, you have to have a bigger toilet.  Okay, thank you. Thank you very much, John. Thank you for your time. You've saved a little time, and we'll hear, as long as you have something to say, we'll hear. I'll try not to exceed my 20 seconds. I do want to make one correction. I was thinking, I haven't looked at the search warrant for some time. I believe that it was Agent Bottomley who was the affiant. I could be wrong. It could have been a second man. We'll make sure, yeah. I just wish to make one other quick point in the few seconds that I have remaining. With regards to Agent Bottomley's testimony, and this is excerpt of record page 68, he indicates that several possibilities. He thought somebody, I thought maybe somebody wasn't home. I thought maybe somebody was asleep. And there was always a possibility that someone is not asleep, just not coming to the door. And he doesn't say anything about sitting around or down. But he also doesn't say anything about flushing down. No, no, he did not. And clearly, when I prepared Agent Bottomley, I had to present the testimony as he told it to me, and he told it to the court. He didn't say that. Well, he was straight up on that. Whether he's certainly a hair-trigger or not, he didn't try to manufacture. Somebody's not asleep, just not coming to the door. My paraphrase was inaccurate, and you got it right. I would submit very quickly that that does constitute exigent circumstances. But even if it doesn't, even if that third possibility exists and no exigent circumstances existed, you've got a small apartment and a wait of at least 20 seconds, possibly 30 seconds. And I would submit that his decision to enter at that point was reasonable, as he could reasonably construe that he had been denied entry. And I'll submit it. Thank you very much. Thank you, both sides, for a very helpful argument. United States v. Dixon is now submitted for decision. The next case on the argument calendar this morning is Winston v. Brown.
judges: Beezer, W. Fletcher, Fisher